## Alonzo J. Whiteman v. The People, etc.

1. Criminal Law—*Proof of Corporate Existence.*—In all criminal prosecutions involving proof of the legal existence of a corporation, user is *prima facie* evidence of such existence.

2. Evidence—*Things Found in a Person's Possession.*—In a prosecution for obtaining money by means of a worthless draft, other drafts similar to that mentioned in the indictment found in the defendant's possession, are competent as tending to show guilty knowledge and intention.

3. Cross-Examination.—A person on trial should not be deprived of his legal right to examine or cross-examine witnesses, because of an

inadvertent offensive expression, either by himself or his counsel, but if it does not appear that he was in any way injured, it will not be reversible error.

**Indictment,** for obtaining money on a worthless draft. Trial in the Criminal Court of Cook County: the Hon. ARTHUR H. CHETLAIN, Judge, presiding. Verdict and judgment of guilty; error by defendant. Heard in the Branch Appellate Court at the October term, 1898. Affirmed. Opinion filed June 9, 1899.

H. STUART DERBY, attorney for plaintiff in error.

C. S. DENEEN, State's attorney, HARRY OLSON, assistant State's attorney, for the defendant in error.

In an indictment charging a person with the commission of an act injurious to a corporation, it is sufficient description of the corporation to set forth its corporate name and then to allege that it is a corporation, without adding that it is duly organized under the laws of any State, thus: " A certain corporation, to wit: The Chicago and Alton Railroad Company, the same being then and there incorporated." Bishop's Directions and Form, Sec. 79; Wallace v. People, 63 Ill. 451; Staaden v. People, 82 Ill. 434; Sykes v. People, 132 Ill. 32, 45; 1 Bish. New Crim. Proc., Sec. 682; 2 Bish. New Crim. Proc., Secs. 455, 456; McCarney v. People, 83 N. Y. 408, 38 Am. Rep. 456.

It is sufficient to prove that the corporation exists *de facto.* State v. Mead, 27 Vt. 722; People v. Schwarz, 32 Cal. 161; Hughes Case, 29 Cal. 257; 1 Bish. New Crim. Proc., Sec. 682, 2; 2 Bish. New Crim. Proc., Sec. 752, 2; Kincaid v. People, 139 Ill. 213, 216; Whart. Cr. Ev., Secs. 102, 164 (9th Ed.); Calkins v. State, 18 Ohio St. 366; State v. Thompson, 23 Kan. 338; State v. Baltimore & Ohio R. R., 15 W. Va. 362; State v. Grant, 104 N. C. 908, 10 S. Rep. 554; State v. Collens, 37 La. Ann. 607.

If to the corporate name and the allegation that it is incorporated there be added the allegation " organized under and by virtue of the laws of the State of Illinois," etc., said last allegation may be rejected as surplusage, because unnecessary. McCarney v. People, 83 N. Y. 408; Chrichton v.

The People, 6 Parker C. R. 370; People v. Gilkinson, 4 Parker C. R. 29; Roscoe Crim. Ev., 134 (8th Ed.) 90.

Mr. Presiding Justice Freeman delivered the opinion of the court.

Plaintiff in error was indicted under section 96 of the Criminal Code. It is alleged that he obtained $250 from the Grand Pacific Hotel Company on a worthless draft purporting to have been made by the Lawrence National Bank of Lawrence, Kansas, signed by the cashier of said bank, and drawn on the First National Bank of New York City. The draft was, by its terms, payable to the order of Frank W. Bowman, and by him apparently indorsed payable to the order of E. M. Clark, by which name the plaintiff in error registered at the Grand Pacific Hotel, Chicago. When at the end of a week his bill for board, amounting to $61.09, was presented, he gave the cashier of the hotel company the draft in question, saying that the balance over and above his board could be placed to his credit. The next day he asked for and received $50 on account, and the day following came, apparently in a hurry, asked for his baggage, proposed to leave his address, and requested that the balance of the money be sent to him. The clerk, however, told him to wait a moment, obtained the balance necessary to make up the amount of the draft, and paid him $125.36 in currency after deducting whatever was due for board.

Whiteman was subsequently arrested in St. Louis, where he was stopping at the Southern Hotel under the name of W. H. Martin. In his satchel, upon which was a tag bearing the name of W. H. Martin, with the number of his room at that hotel, were found a considerable number of drafts, apparently made by the Lawrence National Bank, purporting to be signed by the cashier, Walter L. Howe, and drawn on the First National Bank of New York City. These drafts were similar to that described in the indictment, varying only in the amounts, respectively, and in the names of the payees. There was also a letter addressed to the First

National Bank of New York, introducing one John F. Eaton, stating that he was on his way to Europe with drafts to the amount of three thousand dollars, would want foreign currency and exchange, that any courtesy extended would be greatly appreciated, and purporting to be signed by Walter L. Howe, cashier.

Mr. Howe was present at the trial as a witness for the State, testified that these drafts, including that mentioned in the indictment, were not issued by the Lawrence National Bank, and that the signatures of his name to the drafts and letter were not his signatures.

Whiteman was found guilty, duly sentenced, and now prosecutes his appeal.

It is urged in his behalf that there was error in the admission of evidence as to the incorporation of the Grand Pacific Hotel Company; that it having been alleged said company is a corporation organized and existing under the laws of Illinois, it was incumbent upon the State to prove the fact as laid, by the best evidence, namely, the certificate of incorporation or a certified copy. Sec. 486 of the Criminal Code provides " that in all criminal prosecutions involving proof of the legal existence of a corporation, user shall be *prima facie* evidence of such existence." (See Kincaid v. The People, 139 Ill. 213–216.) The evidence shows that the company in question is doing business under the name of the Grand Pacific Hotel Company, as a corporation of the State of Illinois. We regard the objection as not well taken.

It is said that the alleged worthless draft was improperly admitted in evidence because of variance. The alleged variance consists in the omission from the copy of the draft as set out in the indictment, of the signature " E. M. Clarke " upon its back. The indictment charges that the plaintiff in error " Alonzo J. Whiteman, otherwise called E. M. Clarke," falsely pretended to the clerk of the hotel company that the draft in question was a good and valid draft. The draft is then set out *in haec verba*, showing that it was payable to the order of Frank W. Bowman, and by him apparently

indorsed payable "to the order of E. M. Clarke." It will
be noticed that the indictment charges the false pretense to
have been that the draft was good and valid. It does not
charge any false pretense to the hotel company that the
name of plaintiff in error was E. M. Clarke. The indorse-
ment " E. M. Clarke " was made by Whiteman to transfer
the draft to the hotel company. It was no part of the draft
itself. The clerk of the hotel testified that he looked at
the register and saw that the signature " E. M. Clarke " on
the back of the draft was the same as that on the register,
thus identifying the indorser as the guest passing under
that name, and the draft was thereupon accepted. The
State may have been unable to prove any false pretense by
the defendant inducing the hotel to accept the draft on the
ground that his name was E. M. Clarke. The indictment
does not make any such charge. We do not regard the
name so indorsed by the plaintiff in error, in order to trans-
fer the draft, as part of the instrument which the indict-
ment charges was falsely represented to be good and valid,
and hence the variance is not material. Trask v. The People,
151 Ill. 523–528. It has been held that anything appearing
on the paper which is no part of the contract may be omitted
in the indictment. Langdale v. The People, 100 Ill. 263–
268. If the draft had been actually good and valid and the
prisoner its rightful owner, the fact that " E. M. Clarke "
was not his real name, would not have affected its value or
collection.

A quantity of other drafts similar to that mentioned in
the indictment, together with envelopes, stamps and other
documents which were, as the evidence tends to show, found
in Whiteman's possession when he was arrested, were intro-
duced in evidence.

This evidence was clearly competent as tending to show
guilty knowledge and intention. If, as his counsel suggests,
he might have them and still have been innocent of the
charge contained in the indictment, it was open to him to
explain their possession, which he did not attempt.

It is said that no representations, false or otherwise, were

made as to the genuineness of the worthless draft. It is not necessary to make verbal representations. Conduct is often fully as expressive as words, and the passing for value of a draft known to be worthless is a sufficient false pretense. Bishop's Commercial Law, Sections 430–448.

It is urged that the court seriously erred in excusing certain witnesses and refusing to allow the defendant to continue their cross-examination. The defendant in person undertook to cross-examine two of the State witnesses. His questions were properly overruled, not being in any sense cross-examination. After several such questions had been put, the court in each case advising the witness that he need not answer them, the witnesses were respectively excused, over the objection of counsel for the prisoner. This might no doubt have been serious error if the witnesses had been excused from answering any proper or material question. But no such question was put, and it does not appear that the prisoner was in any way prejudiced by the refusal of the court to allow him to prolong such an attempt at cross-examination. The action of the court was, we think, right, although the reason for it was wrong. The question was put to the witness as follows:

"The Prisoner: Mr. Taylor, did you pay me any money?
The Court: That you need not answer. He has not said he did.
The Prisoner: The indictment claimed so.
The Court (to the witness): You may be excused. Call your next witness. It is the rule of this court, whenever a lawyer talks back to the court, to excuse the witness.
The Prisoner: But I didn't know that.
The Court: Now you know it.
Mr. Derby: May he not examine this witness? He is not familiar with the rule of the court.
The Court: I have always up to the present time run this court. I don't see any different rule now. If a man undertakes to defend himself, I can't undertake to make a new rule for him. When a man undertakes to tell me or tell the witness what is in the indictment that is the time to quit."

We can not, of course, from this record know whether there was anything in the prisoner's manner or conduct that

was offensive, but the words used are not in themselves especially objectionable. This was the prisoner, not his counsel, who was trying to conduct the cross-examination, and the law is always jealous of any act on the part of the court that in any way obstructs or hinders a prisoner on trial from putting forward anything and everything which may properly tend to establish his defense or maintain his innocence. When a lawyer or client " talks back to the court " he can be punished for any contempt, and if clearly necessary to maintain the dignity of the court and protect its procedure, should be so punished. But the prisoner on trial, whose liberty is at stake, can not be deprived of his legal right to examine or cross-examine witnesses, because of an inadvertently offensive expression either by himself or his counsel. As, however, it does not appear that the prisoner was in any way injured by excusing the witnesses in question, we do not regard the court's action as prejudicial.

In view of what we have said it is not necessary to discuss in detail the other alleged errors. The evidence amply justified the verdict of the jury and the sentence of the court. Finding no serious error the judgment of the Criminal Court is affirmed.